JOHN BULLARD, Appellee, v. W. J. R. BECK, Appellant.

**TRIAL: Transfer to Equity—Transfer on Complainant's Request.**
1 One may not complain of the sustaining of his own motion to transfer a cause to the equity calendar.

**CONTINUANCE: Absence of Witness—Duty to Overrule on Admission of Opposite Party.** A motion for a continuance on account
2 of the absence of a witness should be overruled when the oppo-

site party admits that such witness, if present, would testify as claimed in the motion.  (Sec. 3665, Code, 1897.)

**PLEADING:  Joining Issue—Premature Assignment for Trial—Ef-**
**3 fect.**  Error cannot be predicated on the fact that a cause was assigned for trial before issues were fully joined, when such issues, so far as material, were fully joined on the same day on which the assignment for trial was made.

*Appeal from Lee District Court.*—W. S. HAMILTON, Judge.

SATURDAY, FEBRUARY 19, 1916.

JUDGMENT on note and on account.  Defendant appeals.
—*Affirmed.*

*W. J. R. Beck*, and *John L. Benbow*, for appellant.

*R. N. Johnson*, for appellee.

SALINGER, J.—I.  We have found it most difficult to ascertain what is presented for our consideration.  What is intended to be the error points and brief points provided for by the rules is a perfect maze of scattered and unrelated matter, covering pages of print.  Under the so-called error point complaining of overruling motion to require election, there are pages of citations and scattered arguments that include the duty to strike out surplusage; what is triable and cognizable in equity; that, bond having been given to release lien, there was no right to maintain an action to establish statute lien; that the law issues in the three counts should have been tried at law, and not transferred to equity; that a motion to strike out irrelevant and immaterial matter is not waived by going to trial; that one is entitled to choice, but not to plurality of remedies; that equitable items should be set forth in a separate petition; that there was error in refusing to make the petition more specific; that a statute lien ceases after possession has ceased; that there is no common-law lien for a livery stable keeper, in the absence of special agreement therefor; that it was error not to require appellee, as bailee, to render an accounting for what was received

from the use of the property in bailment; that inequitable or improper conduct of complainant bars his right to equitable relief; that bailment is terminated by any act of bailee which is inconsistent with the bailment, or which tends to defeat the bailor's right to the property; that obligations as bailee were violated by instituting these proceedings, in that the obtaining of a bond from appellant constituted duress and extortion, "as alleged in the cross-petition", and were also violated by the institution of illegal proceedings to sell the horses, in violation of the bailment, thus compelling appellant to give bond to get possession of his property; and that the proceeding at bar is a direct attack on the validity of this bond.  This one "error", numbered 1, is under the general label "Misjoinder of Causes of Action", and runs from page 6 to and including most of page 12 of the brief.

We have done the best possible in such condition of the printed record.  We have practically waived the rules for the benefit of appellant, and subjected ourselves to labor that should not be required of us.  If perchance, in these circumstances, something that should have our consideration does not have it, the explanation has been given.

II.  Plaintiff sues on a promissory note executed by the defendant, claiming that it evidences a settlement and balance found due.  Defendant responds that the note was a mere accommodation note, had served its agreed purpose, and was wrongfully being enforced, and asks its cancellation.  Plaintiff also makes claim for keeping certain of defendant's horses.  To this, there is a defense in the nature of a counterclaim, alleging certain agreements under which the use of the horses should be set off against the value of the keep, and with such claims as that negligence and misconduct on part of plaintiff prevented the use of some of the horses during a racing season, to the great damage of the defendant; that he was greatly damaged by the fact that plaintiff asserted a lien for the keep and compelled delivery bond, being affected in both credit and pocket by what is termed procedure working ex-

tortion and violation of due process of law. Finally, the defendant filed a cross-petition in equity, which litigates on paper all that is presented by the law pleadings.

Defendant moved that plaintiff be required to elect which cause or causes of action referred to by him in the several counts of his petition he relies on, and that he "eliminate all other matters and allegations in the respective counts in which the said causes are set forth"; that is, plaintiff should be required to separate Counts 1, 2 and 3 of his petition, and by that means set forth:

(1) "The action in equity to enforce a lien" in a separate petition from the action on account, and the claim for services rendered;

(2) Be required to set forth in still another count his action on the note;

(3) Should state in the several counts whether he relies on a *quantum meruit* implied, or an express contract in his said claim, founded upon an account, and for services rendered;

(4) Whether or not the horses referred to are now, and were at the time that the suit was begun, in his possession;

(5) To set forth an accounting in full for the services, use and profits accrued appropriated by him, or derived from the horses, team, and other property of the defendant, during the time that such property was in plaintiff's possession or control;

(6) To set out in the several counts an itemized statement of the account for keep, feed, care and attention for which he claims.

He moved further that there be stricken from the prayer in the counts the words "and prays that the same be declared to be a lien upon the said horses of defendant". This last, alone, was sustained.

As we gather it, defendant now complains that these various pleadings on both sides stated both law and equitable issues; that each should have been tried in its appropriate

forum; that his motion to elect aforesaid was a request that these several issues be thus tried; and that it was error to transfer the case *in toto* to the equity side.

2.

In the cross-petition heretofore referred to, appellant "prays the court that this action be transferred to the equity docket, and that in equity an accounting be ordered by the plaintiff in the original action; . . . that the said promissory note and delivery bond given by this cross-petitioner be each ordered surrendered up and canceled; that judgment in favor of this cross-petitioner be rendered against John Bullard, plaintiff . . . for the amount found due this cross-petitioner from the said John Bullard, and for costs incurred in this action in maintaining this cross-petition, and for such other and further relief as shall be deemed just and equitable in the premises".

It will be remembered that this cross-petition put in issue all that was asserted by either plaintiff or defendant. Not alone this, but, after this cross-petition had been filed, the defendant filed the following motion:

"Comes now the defendant and cross-petitioner, W. J. R. Beck, and moves the court to transfer this case to the equity docket and calendar on the issues joined by the cross-petition of the said defendant, *and his answer to plaintiff's petition,* which also claims a lien on plaintiff's property of equitable cognizance."

It will be remembered, too, that the prayer for equitable relief contained in plaintiff's petition had, on the motion of the defendant, been stricken out. The order made on the motion to transfer is as follows:

"Cause transferred to equity docket; jury waived by plaintiff as to law issues; counsel for plaintiff waives time for taking of depositions; and cause assigned for December 15, 1913, at 2 P. M."

No exception was taken to this ruling. It is now asserted that all this amounts to is a recital that the plaintiff waived a jury as to law issues; that this does not show that the defendant concurred in the waiver, and that, as said, it was error to transfer the cause *in toto*. As said before, the ruling thus transferring was not excepted to, and the motion itself asks the transfer of "this case . . . joined by the cross-petition of the said defendant, and his answer to plaintiff's petition", not that some issues in it be. Later, appellant stated in open court that the defendant had, in his cross-petition, asked for an examination of plaintiff, and "for an accounting upon the matters and transactions arising between the plaintiff and defendant as alleged therein, and which plaintiff in his petition, having recognized by allegations the right to an accounting between the plaintiff and defendant on his part, and the plaintiff in his reply to said cross-petition having failed fully to act with relation to the said matters, the defendant at this time asks the court to direct the plaintiff to submit to an examination under oath with relation to said matters, and also to designate when said examination and accounting shall be had on the issues pertaining thereto". Thereupon, the court said to plaintiff's counsel: "You expect to place Mr. Bullard on the witness stand?" and was answered, "Yes". Whereupon the court said, "Mr. Benbow, I think that will answer your purpose", to which defendant excepted.

Still later, when appellee moved to affirm because the burden of proof on the equitable issues was on defendant, and therefore he had failed to file his argument in rule time, appellant strenuously insisted in resistance that the record shows that the appeal is in equity; "that the case was tried in equity below"; that, when the court below transferred the whole case to the equity calendar, "appellee was assigned the burden in the court below, and assumed it, and proceeded to try his case".

It appears from all this that defendant, so far as he was able to do so, turned the whole suit into an equitable one; that he asked the transfer of the case *in toto,* did not except to its being transferred *in toto,* and in this court based a resistance to affirmance upon the burdens cast upon his adversary by the ruling below. There is no error or brief point which alleges that the judgment below is not supported by the proof, and therefore no claim that the transfer worked any hardship. The only answer with which we are favored is that, because appellant asked that the petition of the plaintiff be separated, this overcomes all that has been stated. This request is not inconsistent with one to transfer to equity. The equity practice requires separation into numbered paragraphs. But in no view can the motion to separate into counts cancel the specific requests to transfer and the conduct which cannot be reconciled with anything except a desire to have the whole cause tried in equity. To put it in other words, the claim is that, where defendant moves the transfer of a cause to equity, after having pleaded that all things in controversy should be dealt with in equity, and takes no exception to that being done which he has thus caused to be done, and later claims a benefit from the action below, he may on appeal complain of the transfer because he asked that the petition should state the different items in separate counts. This is a novel contention. The reports are filled with complaints that issues triable in equity were not transferred, and of complaints that issues not thus triable were. But the essential position of this complainant is that the transfer for which he had laid the foundation in pleading, which he himself had moved, and to the granting of which he did not except, is a compelling reason for reversing the trial court. In bald words, there should be a reversal because the trial court did not refuse to do what appellant asked it to do, without allegation even that such refusal was ever complained of below or worked any prejudice. We cannot subscribe to this

1. TRIAL: transfer to equity: transfer on complainant's request.

claim, and are constrained to hold that the court did not err in the transfer.

III.   On the 17th day of November, 1913, the cause was, without objection, assigned for December 15th.   On December 12th, defendant moved for a continuance on account of the absence of a witness.   One claim for the motion is the erroneous one that he had objected to the assigning of the cause for trial for December 15th.   Appellant urges that it was error to overrule the motion to continue.   We think that it should have been sustained.   But that is not material, since the court sustained it, and that ruling is not complained of.

The next complaint is that the court changed its mind and finally overruled the motion.   It is not of itself error that the court changes its position.   It is true that the motion was overruled after it had been sustained. But that was due to the fact that plaintiff proceeded under Section 3665, Code, 1897, and admitted that, if present, the witness on whose absence the motion rested would testify as claimed in the motion.   It was the duty of the court to overrule the motion after such admission was made.   Thereupon, an order was made that, the "cause being at issue, thereupon motion for continuance was overruled.   Defendant excepts", and the case was then set down for trial for December 29, 1913, at 10 A. M.

2. CONTINUANCE: absence of witness: duty to overrule on admission of opposite party.

There is nothing in the contention that the ruling was erroneous because trial was forced before issue had been fully joined.   If the issues were not fully joined at this time, on the same day plaintiff filed a substituted reply to answer to cross-petition, and no one filed another pleading of any kind until the 6th of January, 1914, when the plaintiff filed some formal amendment to petition.

3. PLEADING: joining issue: premature assignment for trial: effect.

We see no error as to any matter assigned, and the decree below will stand—*Affirmed.*

EVANS, C. J., LADD and GAYNOR, JJ., concur.